Edward Thompson, J.
Petitioner moves for a hearing pursuant to section 454 of the Code of Criminal Procedure seeking (a) his discharge from Matteawan State Hospital pursuant to subdivision (5) of section 454 of the Code of Criminal Procedure or, (b) a transfer of petitioner from Matteawan State Hospital to a civil institution.
Under an indictment charging manslaughter in the first degree the petitioner, after a nonjury trial concluded in October, 1966, was found not guilty by reason of insanity. Pursuant to law he was thereupon ordered to be committed to the custody of the Commissioner of Mental Hygiene to be placed in an appropriate institution of the said Department of Mental Hygiene or the State Department of Correction which has been approved by the heads of such departments.
As a prerequisite for this hearing, on September 13, 1967 by order of another Justice of this court, the Commissioner of Mental Hygiene was directed to ‘ ‘ make a report to the court as to the present condition of the inmate as provided in section 454, subdivision 5, C.C.P.”
On October 25,1967, Dr. Alan D. Miller, said Commissioner of Mental Hygiene, submitted a report setting forth the petitioner’s history and the results of a further psychiatric examination made on October 11,1967 as follows:
*141 “ In 1949 Mr. Chapman sustained a gunshot wound of the skull which resulted in personality changes (damage to the right frontal lobe of the brain) and to a convulsive disorder (epilepsy). His psychiatric diagnosis is Psychosis Due to Head Trauma, Personality Disorder Due to Head Trauma with Alcoholic Features.
“ He has adjusted very satisfactorily to the closely supervised medical program at Matteawan State Hospital. He experienced convulsive seizures on May 27, 1967 and May 30, 1967 but since that time medications (“ Dilantin ” and luminal) have permitted seizure-free status.
‘ ‘ He continues to profess total amnesia for the crime, which led to his current hospitalization, but he indicates some awareness that alcohol was implicated in his difficulties.
“ At last report he was free of hallucinations, delusions, and other indicators of major mental illness. It must be pointed out, however, that he is an individual of borderline intelligence and, further, that the documented injury to the right frontal lobe of the brain suggests further and permanent impairment of both volition and judgment. Therefore, while he undoubtedly is sincere in his intentions to avoid alcohol in the future, he could hardly be counted on to adhere to his resolutions.
11 He would constitute a danger to himself and others in the community even in the milieu of a civil state hospital where vigilance could not approximate the close supervision he receives at Matteawan.”
Upon notice to the Attorney-General of the State of New York and the District Attorney of this county, a hearing was held regarding both branches of the defendant-petitioner’s motion.
As recently as December, 1966 the Court of Appeals in People v. Lally (19 N Y 2d 27) interpreted the provisions of section 454 of the Code of Criminal Procedure and for all intents and purposes legislated the practice which must be followed in a proceeding of this nature. That court (pp. 34^35) directed that the ‘ ‘ issues there to be tried are whether appellant may be discharged or released without danger to himself or to others, and, if that question be answered in the negative, whether he is so dangerously mentally ill as to require hospitalization in Matteawan State Hospital.” Thus, this hearing must be divided into two branches if the petitioner is not discharged or released.
Lally, supra, read into subdivision 5 the right to a jury trial upon request. Let it here be noted that in this proceeding the petitioner did not request a jury trial and when informed of his right to one by the court, he and his counsel expressly waived it. Lally further directed that all of the protections of sections 74 *142 and 85 of the Mental Hygiene Law be afforded a petitioner in sneh matters.
In an effort to afford the petitioner all of the foregoing rights, a hearing was held herein and the court received into evidence in support of the petition any and all medical records of Kings County Hospital and the Department of Mental Hygiene to date. In addition thereto, the court made available to the petitioner any medical and psychiatric testimony he so chose.
In this novel proceeding I decreed that with respect to branch one (discharge) the petitioner has the burden of proof by a preponderance of the evidence. Too, I decreed that with respect to branch two (transfer to a civil institution) the Attorney-General and/or the prosecution has the burden of proof by a similar preponderance of the evidence. Obviously this is in the nature of a civil proceeding.
In support of his position under branch one, the petitioner testified in his own behalf and called Dr. Julian Meyen, the Assistant Director of Matteawan State Hospital as his witness. The case history of petitioner indicated that he sustained a severe brain injury in 1949 as the result of a bullet wound which caused atrophy of brain tissue. Dr. Meyen opined that as a result thereof, the petitioner has suffered a number of convulsive reactions and for the same is under constant medication. Further, as a result of such injury to the right frontal lobe of his brain, the petitioner’s judgment and insight is both missing and defective. Further, any exposure to alcohol would cause a resumption of violent conduct as might exposure to women. He further opined that the petitioner would have to experience a freedom from medication for two years before any consideration for discharge could be given.
The petitioner testified that if he were released he would try not to drink any liquor and admitted that he is presently under constant medical care to avoid fits and seizures. He said he would stay away from women. However, he could not remember how many such seizures he experienced nor when the same took place.
I find that the petitioner has failed to sustain the burden of proof from the foregoing. I find as a fact that if he were to be discharged he would be both a danger to himself and others. Accordingly, the petitioner’s motion for discharge under branch (1) is denied.
Concerning branch two, namely transfer to a civil institution, the Attorney-General recalled Dr. Meyen as an eminently qualified medical and psychiatric expert. Ever since the petitioner’s committal in 1966 this witness has personally examined him on *143 a number of occasions. He testified that the chronic psychosis with which the petitioner suffers is due to a trauma of the brain which is incurable and cannot be cured by operation ñor by any known surgery or medical treatment. The erratic conduct of the defendant such as convulsions or violence upon absorption of even small quantities of alcohol can only be controlled by constant medication under maximum security regulations as are presently being offered and provided at Matteawan State Hospital. Confinement in a civil hospital is for acute cases of mental disturbance whereas confinement in Matteawan, a maximum security institution, is specifically designed for chronic cases like the petitioner’s. Dr. Meyen insisted that there are no such facilities available in a civil State mental hospital. Of the conditions therein he spoke with great authority inasmuch as he had previously served for 10 years as Supervising Psychiatrist in the Hudson River State Hospital, a civil institution. Without the foregoing medical treatment and compulsory supervision of the petitioner with maximum security, Dr. Meyen concluded that he would be dangerous to himself and others if transferred to a civil State hospital. To the foregoing evidence petitioner offered no proof.
I find as a fact to the requisite measure of proof that the petitioner is so dangerously mentally ill that if he were transferred to a civil institution he would be dangerous to himself and others. Thus, I conclude that he requires hospitalization at Matteawan State Hospital. Accordingly, under branch two, the petitioner’s motion for transfer to a civil institution is denied.